407 A.2d 387

**Lula GATLING, Individually and as Administratrix of the Estate of Tellie Gatling, Deceased, Appellant,**

v.

**Vickie ROTHMAN and Morris Karp.**

Superior Court of Pennsylvania.

Argued March 28, 1978.

Decided June 8, 1979.

Joseph D. Shein, Philadelphia, for appellant.

Joseph W. Fullem, Jr., Philadelphia, for appellees Rothman and Karp.

Before JACOBS, President Judge, and HOFFMAN, CERCONE, PRICE, VAN der VOORT, SPAETH and HESTER, JJ.

PRICE, Judge:

This appeal concerns an automobile accident occurring at the intersection of Longshore and Rutland Streets in Philadelphia. Rutland Street is one way northbound and is approximately twenty (20) feet wide. It intersects Longshore Street at a right angle; Longshore being a thirty-six (36) foot wide street which accommodates east and westbound traffic. The intersection is controlled by a stop sign on Rutland Street.

At approximately 2:05 a. m. on July 30, 1973, Tellie Gatling was operating his motor vehicle on Rutland Street approaching the junction with Longshore. Appellant Lula Gatling, his wife, was a passenger in the car. The vehicle stopped at the intersection and began to cross Longshore. It

proceeded into the intersection and was approximately ten (10) feet from the opposite curb when it was struck on the left side by a vehicle driven by appellee traveling eastbound on Longshore. Tellie Gatling died as a result of the crash.

Appellant sued appellee and a Morris Karp, M.D.,[1] for personal injuries to herself and in her capacity as administratrix of her husband's estate. Appellee, alleging the negligence of Tellie Gatling, joined appellant in her capacity as administratrix as an additional defendant. In a bifurcated jury trial conducted on February 7 and 8, 1977, on the issue of liability, a verdict was returned in favor of both appellee and the additional defendant. On August 16, 1977, the court below denied appellant's motion for a new trial. For the reasons stated herein, we reverse that order and remand for further proceedings.

Appellant's first contention[2] is based on the following exchange which occurred during the cross-examination of an investigating officer by counsel for appellee.

"Q. Tell us your purpose to conduct this official investigation of this accident?

A. The purpose of the official investigation was to determine whether there was any motor vehicle violations present, if possible.

Q. That is the purpose of your official investigation?

A. Yes.

Q. With respect to Vickie Rothman, did you make such a determination?

.    .    .    .    .

The Witness Officer Strausser: I have no indication of a motor vehicle violation on the part of Vickie Rothman."

1. The complaint alleged that defendant, Morris Karp, M.D., was the owner of the car driven by appellee, and that appellee was the agent of the owner. The record is silent on the disposition of this claim, except that the transcripts do not carry the Karp name as a party. Upon remand for a new trial, we suggest clarification of the record in this regard, although it is not relevant to our present disposition.

2. Our resolution of this issue makes it unnecessary to reach appellant's other two allegations of error.

N.T. 25–26.

Appellant's timely objection to the question was overruled, and she now contends that the court erred in admitting evidence of appellee's failure to receive a motor vehicle citation.[3]  We agree.

In *Eastern Express, Inc. v. Food Haulers, Inc.*, 445 Pa. 432, 285 A.2d 152 (1971), our supreme court held that in an action for damages arising out of an automobile collision, it was reversible error to admit the testimony of a police officer to the effect that he had arrested one of the parties for reckless driving.  The court reasoned that if pursuant to Section 1211 of the Vehicle Code, 75 P.S. § 1211, evidence of a conviction for violation of that code is prohibited, evidence of an arrest for such a violation should be similarly excluded. More apposite to the instant proceeding, however, is the court's alternative basis for the *Eastern Express* holding.  It noted that "allowing the witness to state he had made such an arrest was tantamount to permitting him to offer a conclusion that Matthews was operating the Haulers' vehicle in a negligent manner.  This conclusion was for the jury and within its exclusive prerogative." *Id.*, 445 Pa. at 434, 285 A.2d at 153.

In *Shepard v. Martin Century Farms*, 245 Pa.Super. 552, 369 A.2d 765 (1977), this court had occasion to utilize this latter rationale.  In *Shepard*, a member of the Accident Investigation Division of the Philadelphia Police Department was asked if a summons had been issued as a result of an automobile accident.  The witness testified that a summons had indeed been issued, but not to appellee.  An objection was interposed and sustained before the officer could answer if appellant had been issued the summons.  In these circumstances, we initially resolved that because the officer's answer led inexorably to a conclusion that appellant had been issued a summons, the testimony was inadmissible

---

**3.**  The officer was subsequently asked if there was any indication that Tellie Gatling committed a motor vehicle violation.  Following a side-bar discussion between counsel and the court, however, the question was withdrawn.

under the *Eastern Express* holding. We further held that the isolated testimony of the officer that he had not issued a summons to appellee's driver was independently inadmissible. If such testimony were relevant, it would be relevant only to prove that, in the officer's opinion, the driver was not negligent. This would clearly usurp a basic jury function.

A similar situation was presented in *Simpson v. Robinson*, 238 Pa.Super. 555, 361 A.2d 387 (1976). In *Simpson* a young boy was struck while crossing the street by a vehicle operated by the defendant. A complaint in trespass was filed and the case proceeded to trial before a jury. During the examination of the defendant by his own counsel, he was asked if the chief of police had cited him for any traffic violations. Over a timely objection, the witness was allowed to testify that he never received a citation. Following a judgment in favor of defendant, we granted a new trial because of the prejudice engendered by the information concerning non-receipt of a citation. Our decision in *Simpson* noted, and we again approve, the language of *Albertson v. Stark*, 294 So.2d 698, 699 (Fla.App.1974): "Common sense (and experience as well) tells us that to the average juror the decision of the investigating police officer, i. e., whether to charge one driver or the other with a traffic violation based upon the result of his investigation, is very material to, if not wholly dispositive of, that juror's determination of fault on the part of the respective drivers."

The instant situation is controlled by the principles of *Simpson* and *Shepard*, and we are presented with no convincing argument to alter these decisions. The court below attempted to justify the admission of the evidence by viewing it both as relevant to the officer's credibility and necessary to clarify his testimony. This second argument is based on the fact that when the officer on direct examination sketched the accident scene, he placed appellee's vehicle on the wrong side of the road. The court below reasoned that the jury may have interpreted this as indicating that appellee was on that same side just prior to the accident; a

possible inference being that appellee was in violation of the Vehicle Code. We cannot agree with this analysis. First, if counsel wished to clarify the officer's testimony, it would have been a simple task to do so without raising the matter of the summons. Second, the officer's credibility was certainly not in question at the time. As our supreme court noted in a similar situation: "In his direct examination, the witness merely described what he did and what he found after his arrival on the scene. This testimony was a factual description only and did not 'open the door' to the objectional cross-examination [relative to motor vehicle violations] that followed." *Eastern Express, Inc. v. Food Haulers, Inc.,* *supra,* 445 Pa. at 435, 285 A.2d at 153.

It is, of course, true that the scope of cross-examination is largely within the purview of the trial judge, whose decision will not be reversed absent an abuse of discretion. *E. g., Commonwealth v. Greene,* 469 Pa. 399, 366 A.2d 234 (1976). Because of the clear import of our decisions in *Shepard* and *Simpson,* however, we must conclude that the court below abused its discretion in permitting the testimony in question.

The order of the court below is therefore reversed and the case remanded for a new trial.

SPAETH, J., files a concurring opinion.

JACOBS, former President Judge, and HOFFMAN, J., did not participate in the consideration or decision of this case.

SPAETH, Judge, concurring:

While I agree with the result reached by the majority in this case, I cannot agree with the majority's rationale that the police officer somehow "usurp[ed] a basic jury function." Majority opinion at 388. "[N]o witness can usurp the jury's function even if he wants to." *Lewis v. Mellor,* 259 Pa.Super. 509, 520, 393 A.2d 941, 947 (1978). The proper rationale for excluding the officer's statement is not "usurpation" but prejudice: whatever help the jury might get from the officer's assessment of the situation is outweighed by the

danger that the jury will give undue weight to the assessment. The distinction between usurpation and prejudice is not important here but it is in other cases, and the sooner we abandon usurpation as a reason to exclude evidence, the better.